IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CHRISTENE LEOGAS                        )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )        Civil Action No. 04-1637
                                        )
JO ANNE  B. BARNHART,                   )        Judge Thomas M. Hardiman
Commissioner of Social Security,        )
                                        )
                    Defendant.          )


## <u>MEMORANDUM OPINION</u>

### I.      Introduction

Plaintiff Christene Leogas (Leogas) brings this action pursuant to 42 U.S.C. §405(g) and §1383(c)(3) of the Social Security Act (Act), seeking review of the final determination of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  This matter is before the Court on the parties' cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure based on the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the memoranda of the parties and the entire record, the Court finds the ALJ's decision is supported by substantial evidence.  Therefore, the Court will deny Plaintiff's motion for summary judgment and affirm the determination by the Commissioner.

## II.    Procedural History

Plaintiff applied for DIB and SSI on June 28, 2002, claiming disability as of May 15, 2001, because of depression, anxiety, obesity, and panic attacks.  Plaintiff then requested an administrative hearing before an ALJ, which was held on March 25, 2003.  (R. 178-194).  The state agency initially denied her claim and ALJ James J. Pileggi reached the same result in an opinion dated June 18, 2003.  (R. 38-45).  One month later, however, the Appeals Council vacated the hearing decision and remanded the case, instructing the ALJ to evaluate Leogas' mental impairment in accordance with the special technique described in 20 C.F.R. §404.1520a and §416.920a and to obtain testimony from a vocational expert (VE).  (R. 55-58).

A second hearing was held on October 28, 2003 at which Plaintiff, who was represented by counsel, and a VE testified.  (R. 195-211).  In a decision dated December 24, 2003, the ALJ found that Plaintiff was not disabled under the Act because she could perform a wide range of work at any exertional level.  (R. 17-22).  The Appeals Council found no reason to review the decision and denied Plaintiff's request for review on August 30, 2004, making the ALJ's opinion the final decision of the Commissioner.  (R. 6-8).

## III.    Facts

Plaintiff Leogas was 30 years of age at the time of the ALJ's decision, making her a "younger person" under the regulations.  20 C.F.R. §404.1563.  She has a high school diploma and has worked in the past as a hairdresser, janitor, video store clerk, and waitress.  Plaintiff also obtained a cosmetology license in 1992.  (R. 90, 183, 205).  She is divorced and has no children. (R. 123).

2

Plaintiff began treating with her primary care physician, Bernard J. Bernacki, D.O., on August 20, 2001.  (R. 116).  Dr. Bernacki indicated on September 4, 2001 that Leogas was "doing reasonably well on Prozac 20, but feels that this is inadequate."  (R. 116).  At her December 13, 2001 follow-up appointment, Leogas questioned the need to continue medication. Although Dr. Bernacki found Leogas' mood to be good, he decided to continue her medication through the winter.  (R. 115).

Six months later, Plaintiff presented to Mercy Behavioral Health (Mercy) and clinician Dwayne Wilson met with her on June 18, 2002.  (R. 132-42).  In his assessment, Wilson wrote that Leogas "said she has two anxiety attacks at day."  (R. 135).  Ten days later, on June 28, 2002, Mercy clinician Camille Kalista completed an assessment on Leogas.  (R. 125-31).  In her assessment, Kalista noted that Leogas will work with a psychiatrist and will utilize stress management and relaxation therapy to decrease her anxiety.  (R. 130).  That same day, Leogas filed her application for SSI and DIB.

One week later, on July 5, 2002, Leogas presented to Mercy complaining of daily panic attacks.  (R. 121).  In a psychiatric evaluation dated July 17, 2002, Julie Garbutt, M.D., diagnosed Leogas with panic disorder with agoraphobia and depressive disorder, not otherwise specified.  Dr. Garbutt also indicated that Leogas had a GAF of 40.  (R. 124).  During this meeting, Leogas stated that she was off Prozac for about three weeks.  (R. 123).  In addition, Leogas said she had been dating someone for about a year.  (R. 123).  Her mental examination revealed that Plaintiff's thought process was goal directed; she had no current suicidal or homicidal ideation, hallucinations, delusions or paranoia, she was alert and oriented x3; her insight and judgment were fair; and her memory was grossly intact.  (R. 123).  Finally, Dr.

3

Garbutt stated that she was going to begin Leogas on Celexa, she would return in five weeks for medication monitoring, and would begin individual therapy.  (R. 129).

A little over a month later, on August 26, 2002, Leogas presented again at Mercy reporting "severe anxiety over life stressors, though she reports sitting in her house all day long." (R. 161).  Certain treatment goals are listed, including: learning to identify life stressors, relaxation techniques, attending stress management groups, taking care of her emotional and physical health, reducing her sleep, and paying attention to diet.  (R. 161).

Four months later, Mercy reported Plaintiff's progress toward the aforementioned goals as of December 20, 2002:  "Christine has not been attending IT; has not worked on learning anxiety techniques . . . Christine will hopefully attend the stress management group . . . Christine reports not cutting back on sleep time; will try again."  (R. 161).  Less than three months later, on March 10, 2003, Leogas was provided an individual treatment plan by Mercy that she signed. (R. 166).  But as of July 10, 2003, she was not attending therapy regularly.  (R. 167).

On October 1, 2002, state agency consultant Manella Link, Ph.D., completed a Psychiatric Review Technique Form (PRTF).  (R. 143-56).  On the PRTF, Dr. Link indicated that Leogas suffered only mild restrictions of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace.  (R. 153). That same day, Dr. Link completed an RFC assessment on Plaintiff which showed  that she was not significantly limited in 11 categories and moderately limited in 9 categories.  (R. 157-58). Dr. Link did not find Leogas to be markedly limited in any category.

During the hearing, the ALJ asked vocational expert L. Leon Reid, Ph.D., whether jobs were available for a younger individual with a high school education who had the RFC to

perform work at any exertional level which is simple and repetitive, involves no interaction with the public or team-type activities, no high stress tasks (defined as involving high production quotas or close quality standards), in a routine work setting.  (R. 20).  The VE concluded that Leogas could work as a vehicle washer, hand-packer, or bench assembler.  (R. 21).

IV.    **Standards of Review**

Judicial review of  the Commissioner's final decision on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3).[2]  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983).  The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings.  *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Supreme Court has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson,* 402 U.S. at 401 (citation omitted).  *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."  *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ.  *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir.

2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ.  This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87";  parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support the ultimate findings.  *Stewart*, 714 F.2d at 290.  In making a determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain the reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected.  *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000).  *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984);  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician:  "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

7

has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A).  When resolving the issue of whether a

claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the

Commissioner applies a five-step analysis.  20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See*

*Sullivan*, 493 U.S. at 525.  The United States Court of Appeals for the Third Circuit summarized

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a).  If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . .  In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. § 404.1520(c).  If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  20 C.F.R. § 404.1520(d).  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(d).  The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*].  At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f).  The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled.  The ALJ will often seek the assistance of a vocational expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment.  *Burnett*, 220 F.3d at 122 ("the ALJ must

9

consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits."  *Bittel,* 441 F.2d at 1195.  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment.  20 C.F.R. § 404.1520(d) (2002).  To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for the decision, and specifically explain why a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments.  *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful

activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979).  Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence.  *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.*  When a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in the decision. *See Cotter*, 642 F.2d at 705.  The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.  The rationale

must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work."  *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  Although "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself."  *Green,* 749 F.2d at 1070-71, *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence.  *Ferguson*, 765 F.2d at 37;  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)."

V.     **Discussion**

A.     Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."
*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted).  The ALJ must

weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason."  *Id*. at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted).  The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation

or lay opinion.  *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ "must 'explicitly' weigh all relevant, probative and

available evidence . . . [and] must provide some explanation for a rejection of probative evidence

which would suggest a contrary disposition . . . .  The [Commissioner] may properly accept some

parts of the medical evidence and reject other parts, but she must consider all the evidence and

give some reason for discounting the evidence she rejects."  *Adorno*, 40 F.3d at 48 (citations

omitted).  *See also Fargnoli*, 247 F.3d at 42-43 (when the ALJ failed to mention significant

contradictory evidence or findings, Court was left to wonder whether he considered and rejected

them, or failed to consider them at all, giving Court "little choice but to remand for a

comprehensive analysis of the evidence consistent with the requirements of the applicable

regulations and the law of this circuit . . . .").

However, a medical statement or opinion expressed by a treating source on a matter

reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not

dispositive or controlling.  *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675,

683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling.  20 C.F.R. §

404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled.  We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other.  The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability.  *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and state the circumstances in which an opinion of a treating source is entitled to "controlling weight."  20 C.F.R. §404.1527(b), (d) (2002).[3]  Medical opinions on matters

---

[3] Subsection (d) states: "How we weigh medical opinions.  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion."  20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating

reserved for the Commissioner are not entitled to "any special significance," although they always must be considered.  20 C.F.R. §404.1527(e)(1-2) (2002).  The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI:  Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI:  Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator."  SSR 96-29, Purpose No. 7.  Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored . . . ."  SSR 96-5p, Policy Interpretation.  Moreover, because the treating source's opinion and other evidence is "important, if the evidence

---

source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[4] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

Finally, a medical opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

> B.   State Agency Consultants

Medical consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical . . . consultants or other program physicians . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(i). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council

levels of administrative review.  2.  Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

C.    Application

Plaintiff raises two arguments on appeal.  First, she claims that the ALJ failed to give proper weight to the reports of Dr. Garbutt, the treating psychiatrist, who opined that Leogas cannot work.  (Pl. Br. at 9).  Leogas argues that because Dr. Garbutt's opinion that she cannot work is uncontradicted by any other medical opinion, a finding of disability is required.  (Pl. Br. at 9-15).

The Commissioner responds that Dr. Garbutt's opinion is not controlling because she did not treat Leogas for a significant period of time.  (Def. Br. at 7).  Indeed, Dr. Garbutt evaluated Leogas only once (in July 2002) and nine months later signed off on a form completed by Plaintiff's social worker.  (R. 166).  In light of this limited contact, Leogas' reliance on 56 F.R. 36932, 36936, (*see* Pl. Br. at 11), is misplaced because the premise of a "detailed longitudinal picture" does not exist here.  *See* 20 C.F.R. §§404.1527(d), 416.927(d) (2004).  Moreover, the Regulations indicate that a treating source's opinion about a claimant's *ability to work*  is not entitled to any special deference.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling 96-5p.

Furthermore, Dr. Garbutt's opinion regarding Plaintiff's impairments is not dispositive because "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record . . . ." 20 C.F.R. §§ 404.1527(e)(2), 416.927(d)(2).

 The record in this case indicates that the ALJ considered other substantial evidence which is contrary to Dr. Garbutt's assessment of Leogas' condition.  The ALJ considered Leogas' descriptions of daily activities, Dr. Garbutt's treatment notes, and the opinion of Dr. Link, the state agency consultant.  (R. 18-20).  Significantly, Dr. Link found that Leogas had no signficant to only moderate limitations in her ability to understand and remember, sustain concentration and persistence, interact in social situations, and to adapt to situations.  (R. 157-58).  These opinions are entitled to weight, 20 C.F.R. §§404.1527(f), 416.927(f), and the ALJ did not err in considering them.  (R. 19).

Similarly, the ALJ was entitled to make an adverse credibility determination regarding Leogas' testimony regarding her limitations.  *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983).  "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-90 (4th Cir. 1984).  As an initial matter, the ALJ noted the fact that Leogas has never been hospitalized, she testified that she sees her psychiatrist and therapist once per month, and has not been prescribed particularly powerful or high doses of anti-psychotic medication.  (R. 20).  The ALJ also noted that Leogas reported that she cares for her personal needs such as dressing, bathing, doing chores, shopping, and paying her bills.  Moreover, Leogas claimed disability as of May 15, 2001, but her lifetime work record is poor, which casts doubt on her motivation and desire to engage in regular and sustained employment regardless of her health.  (R. 20).  Substantial evidence exists in the record to support all of these findings.  (R. 81, 93-98, 111).  Accordingly, the ALJ's determination was consistent with the governing regulations.  *See* 20 C.F.R. §§404.1529 and 416.929(b).

Finally, although Plaintiff claims in her brief that Dr. Garbutt opined that she is disabled, there is no citation to the record for this proposition and the Court's independent review of the record has found no such statement.  Apparently, Plaintiff relies on the GAF score of 40 as dispositive evidence of disability in light of the VE's testimony that one who has a GAF of 40 over an extended period of time cannot be substantially gainfully employed.  This argument misses the mark both factually and legally.

Plaintiff's assertion that the record demonstrates that she had a GAF of 40 that "had been persistent over a significant period of time," (Pl. Br. at 12), is plainly wrong as a matter of fact.  The record indicates that Plaintiff received a GAF of 40 in July 2002 and she received the identical score on a form that was completed in March 2003.  Moreover, the law requires that before a disability finding is made, an impairment must last, or be expected to last, for a continuous period of at least twelve months.  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§404.1509, 416.909.  Thus, to the extent that Plaintiff argues that her GAF score of 40 during a nine month period renders her disabled, it is contrary to law.[5]

Plaintiff next argues that the ALJ erred when he posed a hypothetical question to the VE that failed to account for all of her functional limitations.  Although Leogas correctly states the legal standard, *viz.*, that a hypothetical question posed to a VE must accurately state the claimant's limitations, *Podedworney v. Harris*, 745 F.2d 210 (3d Cir. 1984), she errs when she suggests that the record does not support the RFC that the ALJ posited to the VE.  The Third Circuit has made clear that a hypothetical question must reflect only those impairments that are supported by the record, *Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir. 1987), and the foregoing

---

[5]  Even had Leogas shown that her GAF score of 40 persisted for at least 12 months, this does not, *ipso facto,* render her disabled.  *See* 65 Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings").

discussion demonstrates that the ALJ's RFC determination is supported by the record.

Plaintiff relies heavily on the Third Circuit's decision in *Burns v. Barnhart*, 312 F.3d 113, 129-130 (3d Cir. 2002), in support of her argument that the ALJ's use of the phrase "simple, repetitive tasks" is fatally flawed. *Burns* is not as broad as Plaintiff argues, however. The crux of the Third Circuit's holding in *Burns* is that the hypothetical posed in that case was deficient because it could not be squared with the fact that Burns possessed borderline intellectual functioning. *Id.* at 122-23. In the instant case, there is no such disparity between the RFC found by the ALJ and the hypothetical question he posed to the VE. Accordingly, *Burns* is factually inapposite to Leogas' case.

## VI. Conclusion

The Court has reviewed the ALJ's findings of fact and decision and determines that his ruling is supported by substantial evidence. Accordingly, the Court will deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.

July 14, 2005

   s/ Thomas M. Hardiman
Thomas M. Hardiman
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTENE LEOGAS,                    )
                                     )
              Plaintiff,             )
                                     )
      v.                             )          Civil Action No. 04-1637
                                     )
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social Security,     )
                                     )
              Defendant.             )

**ORDER OF COURT**

       AND NOW, this 14th day of July, 2005, in accordance with the foregoing memorandum

opinion, it is HEREBY ORDERED as follows:

       1.   Defendant's Motion for Summary Judgment (Document No. 8) is GRANTED.

       2.   Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED.

       3.   The decision of the Commissioner is affirmed, and judgment is entered in favor of

Defendant.

                                        BY THE COURT:

                                         s/ Thomas M. Hardiman
                                        Thomas M. Hardiman
                                        United States District Judge

cc:  counsel of record as listed below

Karl E. Osterhout, Esquire              Paul E. Skirtich, AUSA
1789 S. Braddock Avenue, Suite 570      U. S. Post Office and Courthouse
Pittsburgh, PA 15218                    700 Grant Street, Suite 400
                                        Pittsburgh, PA 15219